IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON FOR SEATTLE

| | |
|---|---|
| NGETHPHARAT  ANYSA;<br><br>               Plaintiff,<br><br>    v.<br><br>STATE FARM MUTUAL INSURANCE<br>COMPANY;<br><br>              Defendant. | NO.<br><br>CLASS ACTION COMPLAINT FOR<br>BREACH OF CONTRACT, VIOLATION OF<br>WASHINGTON CONSUMER<br>PROTECTION ACT & DECLARATORY<br>RELIEF |

COMES NOW  NGETHPHARAT  ANYSA ("Plaintiff") the above-named Plaintiff, as the proposed Class Representative, for causes of action for breach of contract, violation of the Washington Consumer Protection Act ("CPA"), and declaratory relief against the above-named Defendant, STATE FARM MUTUAL INSURANCE COMPANY (hereinafter "Defendant" or "STATE FARM") alleges as follows:

## I.  INTRODUCTION

1.1     This action seeks to recover compensatory damages (i.e. the amount underpaid on the claim) suffered by the Plaintiff, and the Members of the proposed Class, all insureds of the Defendant within the State of Washington, as a result of the Defendant's claims handling practice

CLASS ACTION COMPLAINT - 1

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

with respect to the adjustment and payment of total loss claims to its own insureds under STATE FARM's First-Party Private Passenger Auto Physical Damage Coverages.  This Proposed Class Action challenges the claims practice of STATE FARM after STATE FARM had determined, *after its own investigation* – for every member of the proposed Class – that its insureds' vehicles were total losses.  In determining the "actual cash value" to be paid on these total losses STATE FARM commonly used valuation reports from the "Autosource" system obtained by STATE FARM from its vender Audatex[1], to determine what STATE FARM then stated to its insured is the value of the totaled vehicle as of the date of the loss.

1.2  The total loss reports entitled "Autosource Market-Driven Valuation" (hereafter "Autosource Reports" or "*Autosource*") are used on nearly many[2] total loss settlements by STATE FARM.  In turn, approximately 75% of the Autosource reports, each of which can be identified by reviewing the actual reports, or electronically from data that STATE FARM can access from its vender Audatex, took an unsupported deduction for "typical negotiation" which is not permitted under the applicable Washington total loss regulations.  This deduction, found in the fine print, was used to reduce the price of all comparable vehicles on the report, which then results in an average 6.5% reduction in the total loss valuation (the average for all *Autosource*

---

[1] Autotex was formally known as "AudaExplore" and is a supplier of vehicle claims and estimating software which bills itself as "providing solutions for the collision and insurance claims industry"

[2] Plaintiff's investigation shows that these reports appear to have been used by STATE FARM on a routine basis for first- party total loss settlements, with on information and belief, the Autosource system having been used on nearly all losses presently and for at least the last year or so in Washington.   However, to the extent that an *Autosource* valuation report with a "typical negotiation" discount was <u>not</u> generated and used on a STATE FARMS total loss settlement offer (and STATE FARM instead used a valuation report from another source, such as Mitchell or CCC, or only an Autosource report without a "typical negotiation" discount) then these claims would not be in the proposed Class of those who received settlements based upon an *Autosource* estimate with a "typical negotiation" discount, resulting in a smaller class size, and less "savings" to STATE FARM being at issue.

CLASS ACTION COMPLAINT - 2

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

reports with a "typical negotiation discount") upon which STATE FARM bases its payments to its insureds.

1.3     STATE FARM advertised, solicited, and sold Private Passenger automobile insurance policies providing 1st party comprehensive, collision, underinsured motor vehicle property damage coverage in the State of Washington (collectively "first party property damage coverages").  These coverages, like the policy sold to the Plaintiff and members of the proposed class, provide for payment "loss … to a covered vehicle" (under collision/comprehensive) as well as "compensatory damages" the insured is "legally entitled to recover" under the underinsured motor vehicle property damage ("UMPD") coverage.

1.4     As it relates to what are called "total losses,"[3] the contractual obligations of STATE FARM are identical for all three first-party property damage coverages, and are governed by Washington Administrative Code ("WAC"), § 284-30-391 ("§391") entitled "Methods and Standards of Practice For Settlement of Total Loss Vehicle Claims." These standards are incorporated by law and the standard of care applicable to insurers into STATE FARM's contractual obligations to its insureds, and the failure to adhere to them is a breach of contract under Washington Law.  See e.g. *Van Noy v. State Farm Mut. Ins. Co*., 98 Wn. App. 487, 983 P.2d 1129 (1999).

1.5     § 391 states in relevant part:

> Unless an agreed value is reached, **the insurer must** adjust and settle vehicle total
> **losses using the methods set forth in subsections (1) through (3) of this section**.
> **Subsections (4) through (6) of this section establish standards of practice for the**
> **settlement of total loss vehicle claims.**
> ....

---

[3] When a vehicle is a "total loss" is defined by WAC 284-30-320(15): ""Total loss" means that the insurer has determined that the cost of parts and labor, plus the salvage value, meets or exceeds, or is likely to meet or exceed, the "actual cash value" of the loss vehicle. Other factors may be considered in reaching the total loss determination, such as the existence of a biohazard or a death in the vehicle resulting from the loss."

CLASS ACTION COMPLAINT - 3

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

(2) Cash settlement: The insurer may settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any applicable deductible provided for in the policy.

(a) Only a vehicle identified as a comparable motor vehicle may be used to determine the actual cash value.

**(b) The insurer must determine the actual cash value of the loss vehicle by using any one or more of the following methods**:
(i) Comparable motor vehicle: …
(ii) Licensed dealer quotes: …
**(iii) Advertised data comparison: The actual cash value of two or more comparable motor vehicles advertised for sale** in the local media if the advertisements meet the definition of current data as defined in WAC 284-30-320(4). The vehicles must be located within a reasonable distance of the principally garaged area not to exceed one hundred fifty miles.
**(iv) Computerized source: The insurer may use a computerized source to establish a statistically valid actual cash value of the loss vehicle.** The source used must meet all of the following criteria:

(A) The source's database must produce values for at least eighty-five percent of all makes and models for a minimum of fifteen years taking into account the values of all major options for such motor vehicles.
**(B) The source must produce actual cash values based on current data within a reasonable distance of the principally garaged area, not to exceed one hundred fifty miles.**
**(C) The source must rely upon the actual cash value of comparable motor vehicles that are currently available or were available in the market place within ninety days prior to or after the date of loss.**
….
**(4) Settlement requirements: When settling a total loss vehicle claim using methods in subsections (1) through (3) of this section, the insurer must:**
. . .
**(b) Base all offers on itemized and verifiable dollar amounts for vehicles that are currently available or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability.**

**(5) Settlement adjustments: Insurers may adjust a total loss settlement through the following methods only:**
(a) The insurer may deduct from a first party claim the amount of another claim payment (including the applicable deductible) previously made to an insured for prior unrepaired damage to the same vehicle.

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

(b) Deductions other than those made pursuant to (a) of this subsection may be made for other unrepaired damage as long as the amount of deduction is no greater than the decrease in the actual cash value due to prior damage.

(c) If the claimant retains the total loss vehicle, the insurer may deduct the salvage value from the settlement amount, as described in subsection (4)(e) of this section

(emphasis added).

    1.6     In relevant part, §391 provides several different methods to settle a total loss, one of which "must" be used by the insurer to value the total loss vehicle.  §391 further provides a number of mandatory requirements as to what the insurer "must" do as to the comparable vehicles which can be used (what are called in the automobile and appraisal trade "comps") and the adjustments which can be made, in valuing the loss.  These include:

(1) "Base all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability." [WAC § 284-30-391(4)(b)]

(2) beyond the three adjustments allowed by §§(4): "Insurers may adjust a total loss settlement through the following methods only…"  listing adjustments for unrepaired damage and salvage value and prior payments.  [WAC §391(5)]

(3) requiring the valuation to be based upon the actual verifiable prices of vehicles available within 90 days of the loss and within 120 miles of the total loss vehicle's location.  [§391(2)(b)(iii), §391(2)(b)(iv)(B), §391(2)(b)(v)]

(4) requiring the valuation to be based upon "comparable motor vehicles", which means the "same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data. To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." [WAC § 284-30-320(3)].

    1.7     On December 19, 2019, Plaintiff's vehicle was damaged while insured by the Defendant.  Plaintiff's automobile, a 2014 SUBARU FORRESTER 2.5i Premium 4WD 4D Wagon, had 93,947 miles on it.  Plaintiff presented a claim to STATE FARM to compensate her for the damage to the vehicle pursuant to Plaintiff's insuring agreement with STATE FARM.

CLASS ACTION COMPLAINT - 5

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

STATE FARM fully investigated the facts of the claim, determined fault, and any comparative liability, and the estimated cost of repairs of Plaintiff's vehicle, and recorded the results of it's investigation in the claims file.  Based upon this investigation, the claim was determined to be a UMPD claim and STATE FARM elected to declare the SUBARU a total loss.  This determination by the Defendant entitled Plaintiff to the benefits available under her insuring agreement and Washington Law for payment of total losses, and nothing further was required from Plaintiff to obtain these benefits.

  1.8  STATE FARM offered Plaintiff the sum of $13,378.00 as the value of her totaled vehicle, providing that valuation, but not the underlying support for that offer, electronically to Plaintiff.  On information and belief, it is STATE FARM's common policy and practice to provide the total loss value, but not the underlying report used to obtain that value, to its insureds.   Plaintiff requested several times to see the underlying report supporting the number she was given but was only able to obtain it from STATE FARM once a lawyer requested the underlying valuation report.  When the report was received, it turned out that STATE FARM's valuation was based upon an *Autosource* which took an unverifiable and unclear deduction for "typical negotiation" off the verifiable price for each of the four comparable vehicles ("comps"), resulting in the base price (what the average of the four comps show as the value) for Plaintiff's vehicle being $919.75 *lower* than had a "typical negotiation" discount not been taken.

  1.9  The deduction for "typical negotiation" is hidden in the fine print of the report. The report on Plaintiff's vehicle is typical.   First, the adjusted "comps" are shown for each vehicle on the report. E.g., the first Comp is shown this way:

CLASS ACTION COMPLAINT - 6

**Valuation Detail**

**1. 2014 Subaru Forester 2.5i Premium 4WD 4D Wagon**

| | Comparable 1 | Your Vehicle | Adjustments |
|---|---|---|---|
| Price | Renton, Wa | | $15,017 |
| Odometer | 60,473 Mi(Actual) | 93,947 Mi(Actual) | -1,340 |
| Equipment | | Bumper Guard(s) | 25 |
| | | Tonneau/Cargo Cover | 45 |
| Packages | All Weather Package | | -125 |
| | | Cargo Package | 20 |
| | | Mirror w/Compass&HomeLink | 125 |
| | | Comparable 1 Adjusted Price | $13,767 |

The report appears to follow §391, using only comparable vehicles, with the required adjustments for mileage and options being take.   However, the price listed for the "comp" - $15,017 is not the actual "verifiable" price of the comp, and no vehicle is actually "available" for that price.   Instead, if one reads the report carefully, four pages later, where the vin numbers and information which must be provided to be able to verify the comp are listed, the report (as do all Autosource reports used by State Farm) states:

The following information provides the details for the vehicles used to calculate the Autosource Value. The selling price may be substantially less than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparables price.

| 1 | 2014 Subaru Forester 2.5i Premium 4WD 4D Wagon | JF2SJAECXEH547138 | $15,017 |
|---|---|---|---|

Stock# K70163. 60473 Miles. 4 Cylinder 2.5 DOHC Engine, Continuously Variable Tr, All Weather Package, Anti-Lock Brakes, Air Conditioning, Auto Headlamp Control, Alarm System, Aluminum/Alloy Wheels, Bodyside Cladding, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Rear Window Defroster, Heated Power Mirrors, Driver Knee Airbag, Daytime Running Lights, Power Drivers Seat, Floor Mats, Head Airbags, Halogen Headlights, High Definition Radio, Heated Front Seats, Heated W/S Wiper Washers, Intermittent Wipers, IPOD Control, Keyless Entry System, 1st Row LCD Monitor(s), Lighted Entry System, MP3 Decoder, Overhead Console, Panorama Sunroof, Power Brakes, Pwr Driver Lumbar Supp, Power Door Locks, Privacy Glass, Power Steering, Power Windows, 2nd Row Head Airbags, Roof Rails, Rear View Camera, Rear Window Wiper/Washer, Side Airbags, Stability Cntrl Suspensn, Split Folding Rear Seat, Sirius Satellite Radio, Strg Wheel Radio Control, Tachometer, Trip Computer, Traction Control System, Tinted Glass, Tire Pressure Monitor, Tilt & Telescopic Steer, USB Audio Input(s), Velour/Cloth Seats, Wireless Phone Connect, Wireless Audio Streaming, Armrest, Latch System.

Offered for sale by Younker Nissan (425) 251-8100, 5 miles away in Renton, WA. Vehicle information by *Leading Internet Auto Site on 12/21/19.

The advertised price of $15,975 was adjusted to account for typical negotiation.

Rather than taking the allowed adjustments under §391 off of a "verifiable" price of an "available" vehicle ($15,975) the Autosource report has taken a further adjustment – not explained and unverifiable by the insured – off the verifiable price, and then used that adjusted price of $15,017 as the starting point for it's valuation.   The result is a base price for the first comparable vehicle which is $958 less.

CLASS ACTION COMPLAINT - 7

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

1.10     The amount that State Farm "saved" through it's common claims practice can be determined by subtracting the lower adjusted price actually used by Autosource from the verifiable price of the available vehicle.  For Plaintiff's report these were as follows:

| Claimed Price | *Actual Verifiable* Price | $ Savings | % deduction |
|---|---|---|---|
| 1  $15,017 | $15,975 | $958 | 6% |
| 2.  $11,618 | $12,492 | $874 | 7% |
| 3.  $14,565 | $15,495 | $930 | 6 % |
| 4.  $12,183 | $13,100 | $917 | 7% |

State Farm saved the average of the "$ Savings" column by taking the "typical negotiation" discount, resulting in a total loss offer to Plaintiff which was $919.75 lower than the verifiable prices for available vehicles required.

1.11     As such, and as shown by the *Autosource* report – only obtained by Plaintiff after considerable effort and several requests - STATE FARM did not base its total loss offer to the Plaintiff solely upon deductions for "options, mileage or condition" nor upon "verifiable dollar amounts for vehicles that are currently available, or were available within ninety days" as WAC 284-30-391(4) required STATE FARM to do in settling claims under the policy.  Instead, STATE FARM, using *Autosource*, took (and routinely takes) an *additional deduction* for an amount it attributes to "typical negotiation" and does this by deducting an adjustment to the verifiable price for the comps (and though this the insured vehicle) that is (a) not itself "verifiable", (b) is not based upon actual verifiable sales that occurred within the one-hundred and eighty day window and one hundred and fifty mile radius required by §391, and through it by STATE FARM's insurance policy.

1.12     Not only does STATE FARM fail to use verifiable prices for available vehicles, but the actual deduction taken by State Farm for "typical negotiation" (as facts unknowable to

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

any State Farm insured show) violates multiple express requirements of §391, and is a fundamentally unreasonable, unsupportable, and fraudulent hidden deduction:

(a) the deduction is not based upon the purported sales prices of vehicles within 120 miles as §391 requires, or even Statewide in Washington, but rather purportedly is based upon regional data including purported sales in other States;

(b) the deduction is not based upon purported sales prices of vehicles within 90 days of the loss, but rather purportedly upon a years' worth of data, with no adjustments for seasonality;

(c) the deduction is based upon the claimed difference between the asking price and reported sales prices of vehicles which is obtained by Autosource from venders who in turn obtain it from dealers and state taxing and licensing departments, however the lower reported sales prices Autosource uses to calculate the "typical negotiation" discount are lower than the actual bonafide market clearing sale prices due to trade-in value being removed and/or the underreporting of price to save on sales tax.[4]

(d) this unreliable data is then averaged by Autosource for all vehicles, *not vehicles of the same make, model, and/or year*, and is then separated into pre-set price bands, with the average difference in the unreliable data being then rounded to reflect the claimed "typical negotiation" discount for that price band.

(e) Autosource has not tested the reliability or accuracy of the data it uses, nor if the data shows that even the average "typical negotiation" it provides and STATE FARM takes, applies to any specific, make, model, year, mileage, time of year, or vehicle scarcity or demand, let alone to the area (120 miles) and time (90 days) of the total loss, and has done no analysis or validation

---

[4] To give an example, a vehicle may have had an advertised price of $10,000, but the insured trades in a vehicle for $1000, while negotiating down the price by $200. The resulting sold price would be reported as $8,800, for license/tax purposes, but that does not reflect the actual market sale price of the vehicle.

<u>CLASS ACTION COMPLAINT</u> - 9

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

to determine how the figures it claims for "typical negotiation" would apply to any specific vehicle.

The results of this are shown on Plaintiff's Autosource, where as noted in paragraph 1.10, above, the deduction for "typical negotiation" is purportedly 7% for two of the comps (those with $12,492 and $13,100 verifiable prices) but 6% on the two more expensive (those with $15,975 and $15,495 verifiable prices), and as such because of the artificial combining of data not specific to the make, model, or year, the same vehicle (a 2014 Subaru Forester) is alleged to have a 7% "typical negotiation" discount for two comps, but only 6% for two others, with the vehicle with a *lower* offering price, purportedly being available with a higher "typical negotiation" discount. This defies common sense, and is unsupported by any data or analysis, let alone any effort by STATE FARM to validate the deductions, which STATE FARM is responsible for the accuracy of under WAC §284-30-380(7).

1.13    Having obtained a copy of the Autosource report after several efforts, Plaintiff objected to the deduction for "typical negotiation" and asked that it be removed, and the loss paid without it being taken. STATE FARM refused to do so.

1.14    Plaintiff alleges that despite the specific mandates of WAC 284-30-391(4)(b) which is incorporated into its contractual obligations under the standard of care and its duty to follow Washington law in resolving claims, STATE FARM routinely underpays its insureds their total loss claims by deducting additional sums for "typical negotiation" even though such a deduction is not allowed by and does not comply with WAC 284-30-391 or its policy of insurance, nor are such deductions factually supportable or verifiable. By these practices the Defendant places its financial interests ahead of its insureds, failing to fulfil its contractual obligations to its insureds.

<u>CLASS ACTION COMPLAINT</u> - 10

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.  JURISDICTION AND VENUE

2.1      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest and any fees that might be awarded; and minimal diversity exists.[5]   Plaintiff is a citizen of Washington and Defendant is a citizen of Illinois (where it is headquartered).  This Court has personal jurisdiction over Defendant because Defendant is a corporation licensed and authorized to do business in Washington and has transacted business in Washington.  This Court has personal jurisdiction over Plaintiff because Plaintiff consents to this Court's jurisdiction.

2.2      Venue and assignment is proper in this District under 28 U.S.C. § 1391, and LCR 3(e)(1) because King County, Washington is within this District and this is where Defendant operates business through its agents in this State, where the Plaintiff's insurance claim was underpaid by STATE FARM, and where the cause of action against STATE FARM arose.

2.3      The Plaintiff is a citizen of the State of Washington and resides in King County.

## III. THE PARTIES

3.1      Plaintiff resides in the State of Washington in King County.  Plaintiff was insured under a policy of insurance issued by the Defendant.  Plaintiff paid all premiums due to Defendant and otherwise complied with all obligations under the insuring agreement.

---

[5] Based upon the Class sizes of other insurers using Autosource reports with a "typical negotiation" discount, and State Farm's market share in Washington, Plaintiff believes, on information and belief, that over a six year  period there would be approximately 34,000 total loss claims where an Autosource valuation with a "typical negotiation" discount taken was provided to the insured.   Based upon the average "savings" of $665.81 per claim determined in a prior case, this would be $22,637,540 in compensatory damages (i.e he amount State Farm "saved" via taking a "typical negotiation" discount), without considering trebling under the CPA or attorney's fees.

CLASS ACTION COMPLAINT - 11

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

3.2     The Defendant is a foreign insurer, domesticated in Washington, which maintains its head office in Bloomington, Illinois, and has offices and agents in Washington State, and King County, wherein it conducts substantial and ongoing business.

### IV. THE COMMON COURSE OF CONDUCT BY STATE FARM

4.1     STATE FARM solicits and advertises consumers to purchase insurance coverage for their vehicles in Washington.

4.2     These policies providing 1st party comprehensive, collision, underinsured motor vehicle property damage coverage (collectively "first party property damage coverages").  These coverages, like the policy sold to the Plaintiff and members of the proposed class, provide for payment "loss … to a covered vehicle" (under collision/comprehensive) as well as "compensatory damages" the insured is "legally entitled to recover" under the underinsured motor vehicle property damage ("UMPD") coverage.

4.3     Yet, rather than fully adhering to the provisions of the WAC §284-30-391, and fulfilling it's legal responsible of insuring the accuracy of the valuations it provided under WAC §284-30-380(7), STATE FARM uses a report from a third-party vendor, *Autosource*, which routinely takes an additional, unauthorized, fundamentally unreasonable, unsupportable, and fraudulent hidden deduction for "typical negotiation," which results in underpayment of the compensation owed to its insureds under the policy.

### V.  CLASS ACTION ALLEGATIONS

5.1     This action is brought as a class action under FRCP 23.  STATE FARM's conduct has been systematic and continuous and has affected large numbers of STATE FARM's policy holders over time in this State.  Plaintiff brings this class action to secure redress for STATE FARM's uniform and common practice of underpaying its first-party insureds for their total loss

CLASS ACTION COMPLAINT - 12

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

claims and failing to comply with §391.  STATE FARM's conduct has been uniform throughout the Class Period.

5.2     All members of the proposed Class have fully complied with all pertinent policy provisions to receive payment under their policies from the STATE FARM, and STATE FARM has determined that coverage exists for the loss and determined the claim to be a total loss, recording these determinations in its claims file and electronic records.  No further performance is required by any members of the proposed Class to secure all available benefits provided by the STATE FARM policy.

5.3     Plaintiff seeks certification of the following Class:

> All STATE FARM insureds with Washington first party personal line policies issued in Washington State, who received compensation for the total loss of their own vehicles under their First Party (Comprehensive, Collision, and UMPD) coverages, and who received a total loss valuation from Audatex based upon the value of comparable vehicles which took a deduction/adjustment for "typical negotiation."

5.4     Excluded from the Class are (a) the assigned judge, the judge's staff and family, and STATE FARM employees, (b) claims for accidents with dates of loss occurring more than six years before the date of filing, (c) claims where the total loss was on a "non-owed" vehicle (where no insured has any ownership interest or rights in the vehicle), and (d) claims where the insured submitted written evidence supporting a different valuation, and the amount of that different valuation submitted by the insured was paid by STATE FARM to settle the total loss.

5.5     Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court.  The exact number of Class members is unknown but can be readily determined from the records maintained by Defendant.  STATE FARM's records, including those readily obtainable by STATE FARM from its agent Audatex allow the members of the proposed Class, as well as those who are then excluded to be identified with precision.

CLASS ACTION COMPLAINT - 13

5.6     Plaintiff is typical of member of the Class.  Plaintiff purchased a STATE FARM automotive policy, paid premiums, and made a claim for loss when her insured automobile was damaged.  Plaintiff filed a claim and made her vehicle available for determination and payment of the loss.  STATE FARM then elected to declare the vehicle a total loss but underpaid the loss based upon a valuation obtained from a third-party vendor (Audatex) which used criteria to underpay the loss, which was not permitted under STATE FARM's contractual obligations. Plaintiff's interests in obtaining compensation for her loss (the underpayment on her claim compared to the amounts she would have received, but-for, the "typical negotiation" adjustment discount and compensation under the CPA) are identical to those of other unnamed members of the Class.

5.7     There are questions of law and fact common to all members of the proposed Class, which predominate over any individual issues.  Included within the common questions of law and fact are the following:

a)     Whether STATE FARM's use of a "Typical Negotiation Adjustment" discount complied with WAC §391 and as such its obligations under its policies and its obligations as an insurer under those policies;

b)     Whether STATE FARM through such conduct breached its contracts of insurance with the Class Members by failing to compensate its insureds by taking a "Typical Negotiation Adjustment" deduction;

c)     Whether STATE FARM through such conduct has violated provisions of the Washington Consumer Protection Act, RCW 19.86 *et seq.*;

d)     The amounts by which STATE FARM underpaid the claims of the members of the Class by using a "Typical Negotiation Adjustment";

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

e)      Whether Plaintiff and the class are entitled to an award of treble damages;

f)      Whether Plaintiff and the class are entitled to an award of attorney's fees; and

g)      Whether Plaintiff and the class are entitled to declaratory and injunctive relief.

5.8      Plaintiff has no interests adverse to the interests of other members of the proposed Class and will fairly and adequately protect the interests of the Class.

5.9      Plaintiff has retained the undersigned counsel who are experienced and competent in the prosecution of class actions and complex litigation and have extensive experience with litigation involving insurance claims practices.  Counsel have the resources and experience necessary to prosecute this case.

5.10      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, STATE FARM's use of a computerized source which improperly underpays the actual cash value loss to its insureds will continue, the overwhelming majority of Class Members will  not know of State Farm's misconduct, and the Class members will continue to suffer damage and STATE FARM's conduct will proceed without effective remedy.

5.11      Individual members of the proposed Class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed Class, and in nearly all, if not all cases, not knowing that STATE FARM's practices in settling their total loss did to comply with the WAC regulations and as such STATE FARM's obligations under the policy and that as such an underpayment exists.

5.12      This action will allow the orderly, fair, and expeditious administration of Class claims, economics of time, effort, and expense will be fostered, and uniformity of decisions will

CLASS ACTION COMPLAINT - 15

be ensured.  A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

5.13    This action will present no difficulties which would impede its management by this Court as a class action and a class action is the best available means by which Plaintiff and the members of the proposed Class can seek redress for the harm caused to them by STATE FARM.  An exact list of members of the proposed Class can be generated from STATE FARM and its vendor's records.  STATE FARM's records will also show the amounts its insureds were under-paid for their total loss claims where the amounts paid were reduced for "Typical Negotiation Adjustment."  As such, both liability and damages can be shown on a Class-wide basis with common evidence and then allow any recovery to be distributed to the members of the Class.

## COUNT I – BREACH OF CONTRACT

6.1    Plaintiff realleges the allegations contained in the previous paragraphs as if fully set forth herein.

6.2    Plaintiff and members of the proposed Class entered into contracts which were identical in all material respects with STATE FARM.  They paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.  They complied with all conditions precedent under the policies and presented their claims.  As to each claim, STATE FARM has found coverage to exist and apply and all conditions precedent to payment to be satisfied.

6.3    While it owed each member of the proposed class a duty of good faith and fair dealing, and under the standard of care for insurers and the policy itself was required to follow Washington law in adjusting losses, STATE FARM breached its contract with Plaintiff and

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

members of the Class by its failure to adjust and pay their total loss claims pursuant to the

criteria set forth in §391 for adjustment of total loss claims.

6.4     As a direct consequence of the foregoing, Plaintiff and the members of the Class

have been damaged by the underpayment of their total loss claims, in an amount to be

determined at trial.

## COUNT II – VIOLATION OF CONSUMER PROTECTION ACT

7.1     STATE FARM's actions/omissions/failure to disclose are unfair and/or deceptive

trade practices that have the capacity to and do deceive consumers, as STATE FARM has denied

payment of benefits to Plaintiff and the class through knowingly misrepresented the basis for its

total loss valuations.

7.2     STATE FARM has failed to adopt and implement reasonable standards for the

investigation and payment of claims, and pays claims based upon purported deductions that are

neither "verifiable" nor based upon actual verifiable sales as required by WAC §391, fall outside

of the geographical scope (150 miles) and time frame (90 days) required by WAC §391, and are

not based upon "comparable motor vehicles" as required by WAC §391 and through it by

STATE FARM's insurance policy.  STATE FARM has made false representations as to the

characteristics and benefits of its total loss coverage and insurance policies and represented that

they were of a particular standard, quality, or grade knowing they were not.

7.3     STATE FARM's use of a deduction for "Typical Negotiation" adjustment,

determined in the way Autosource determines it, is a *per se* violation of the WAC.

7.4     The forgoing acts/omissions/failure to disclose have affected STATE FARM

insureds as a part of a repeated course of conduct, thereby affecting public interest, and also

violate the provisions of the Washington Administrative Code, making them *per se* violations of

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

the Washington Consumer Protection Act.

7.5    As a direct consequence of the foregoing, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

### COUNTS III & IV DECLARATORY & INJUNCTIVE RELIEF

8.1    Plaintiff brings this cause of action for herself and the class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an auto insurance policy with STATE FARM, it is a violation of Washington law and the insuring agreement with STATE FARM for STATE FARM to base its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "Typical Negotiation "adjustment which are neither itemized or explained.

8.2    This court has the power to declare the rights of said STATE FARM policyholders and those who would be insured under such policies and who may suffer similar losses in the future, as well as those who have suffered valuation-related losses.

8.3    This court has the power to enjoin further unfair/deceptive acts/practices pursuant to RCW 19.86.090.

### VI.  PRAYER FOR RELIEF

7.1    Plaintiff and the members of the proposed Class have been injured from STATE FARM's breach of contract and violation of the CPA as described above.  As a result, Plaintiff and the members of the proposed Class are entitled to, and pray for, the following relief:

1.    An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

2.    An Order appointing Plaintiff as class representative and appointing the

CLASS ACTION COMPLAINT - 18

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

undersigned counsel to represent the class;

3.      A judgment for compensatory damages resulting from STATE FARM's breach of its obligations under the policy in the amount of the underpayment to those with-in the proposed Class as measured by the amount by which payments were reduced by the taking of a "Typical Negotiation" adjustment discount;

4.      That any judgment be trebled in accordance with RCW 19.86.090 as to those claims falling within the four-year statute of limitations;

5.      Declaratory and injunctive relief consistent with the allegations in this Complaint;

6.      A judgment for Plaintiff's attorney's fees and costs of suit;

7.      Post-judgment interest on the judgment at the rate provided by law from the date of judgment until paid; and

8.      Such other relief as deemed just and equitable.

DATED this 25 day of March, 2020.

Law Offices of STEPHEN M. HANSEN, P.S.

_____
STEPHEN M. HANSEN, WSBA #15642
Of Attorneys for Plaintiff

Scott P. Nealey
(To be admitted *Pro Hac Vice*)
Law Office of Scott P. Nealey
71 Stevenson St #400
San Francisco, CA 94105
Phone: 415-231-5311
Fax:    415-231-5313
Cellular: 415-640-4806
snealey@nealeylaw.com

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

1

2

                              VERIFICATION

3      THE UNDERSIGNED verifies under penalty of perjury under the laws of the State of
Washington as follows:

4

5      That as the above-named Plaintiff, I have read the above and foregoing Complaint, and to
the best of my knowledge the allegations contained therein are true and correct.

6

7      DATED AT Renton, Washington, this 25 day of March, 2020.

8

9                                          NGETHPHARAT ANYSA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT - 20

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax