The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANYSA NGETHPHARAT and JAMES KELLEY;<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY;<br><br>Defendant. | Civil Action No. 2:20-cv-00454-MJP<br><br>**DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY**<br><br>**Oral Argument Requested**<br><br>NOTE ON MOTION CALENDAR: June 26, 2020 |

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

**WHEELER TRIGG O'DONNELL LLP**
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

## I. INTRODUCTION

Plaintiffs were in vehicle accidents and filed claims with State Farm under their insurance policies. State Farm declared their vehicles to be total losses, which meant State Farm was required under the policies and Washington law to pay Plaintiffs the "actual cash value" of their vehicles before the accident. Washington insurance regulations define the "actual cash value" of a vehicle as its "fair market value" immediately before the accident. Plaintiffs do not allege that State Farm did not pay the fair market value of their vehicles. Rather, Plaintiffs allege that State Farm impermissibly applied a "negotiation discount" to the advertised prices of comparable vehicles in calculating the actual cash value of their totaled vehicles.

All of Plaintiffs' claims rest on the same faulty premise—that the *advertised* price of the comparable vehicles equals the actual cash value of those vehicles. But that presumption is both counterintuitive and incorrect because it ignores "the realities of the haggling that ensues in the American market when one buys a vehicle." *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 423 (5th Cir. 2004). Besides, nothing in the applicable Washington insurance regulations prohibits State Farm from applying a negotiation deduction to account for that reality. Accordingly, the Court should dismiss Plaintiffs' claims because their allegations are contrary to the provisions of Washington law on which they rely, and their allegations fail to state a claim that they did not receive the actual cash value required by those regulations. The Court also should dismiss Plaintiffs' declaratory judgment claim as duplicative and should dismiss Plaintiffs' injunctive relief claim because it is a remedy, not a separate cause of action.

Alternatively, the Court should compel appraisal and stay this action. Plaintiffs' insurance policies require appraisal whenever the insured or the insurer disagree about the actual cash value of a vehicle, and one side requests appraisal. Here, Plaintiff Ngethpharat requested an appraisal in January 2020, and State Farm promptly requested an appraisal for Plaintiff Kelley soon after he first asserted his disagreement regarding the actual cash value of his total-loss vehicle by filing this lawsuit. Plaintiff Kelley declined appraisal. Appraisal clauses are vigorously enforced under Washington law, and courts routinely grant stays while the appraisal

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

1

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

process is underway. Accordingly, if the Court declines to dismiss Plaintiffs' Complaint in its entirety, then it should compel appraisal and stay this action pending those appraisals.

## II. FACTUAL BACKGROUND

### A. Anysa Ngethpharat

On December 19, 2019, Plaintiff Ngethpharat's 2014 Subaru Forester was in an accident. (ECF No. 5 ("Am. Compl.") ¶ 1.7.) Her vehicle had 93,947 miles on it when the accident occurred. (*Id.*) She presented a claim to State Farm for the vehicle's damage. (*Id.*) State Farm determined that her vehicle was a total loss, and allegedly offered Plaintiff Ngethpharat $13,378 for her vehicle.[1] (*Id.* ¶ 1.8.) The Autosource report on which State Farm based its actual cash value for the totaled vehicle allegedly showed a "typical negotiation discount" amount of $919.75 for the comparable vehicles—the negotiation deduction was 6% for two comparable vehicles and 7% for two comparable vehicles.[2] (*Id.* ¶¶ 1.8, 1.12.) Ngethpharat says she objected to the negotiation deduction and asked State Farm to remove it, but State Farm allegedly refused to do so.[3] (*Id.* ¶ 1.17.)

---

[1] State Farm actually paid her $13,948. *See, infra,* footnote 3.

[2] *See* Ex. A (First Ngethpharat Autosource Report). "Ex." citations refer to the exhibits to the Declaration of Peter W. Herzog III in Support of Defendant's Motion to Dismiss. Because Plaintiffs refer in their complaint to these documents or to the transactions they memorialize, the Court may consider the documents in ruling on this motion. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (stating that "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

[3] Although the factual allegations in a Complaint must be taken as true at the motion-to-dismiss stage, this allegation is undeniably false, raising a substantial question with respect to the adequacy of the pre-filing investigation. Plaintiff Ngethpharat's counsel specifically objected to the negotiation deduction in State Farm's first offer. State Farm then obtained a second Autosource report based on a two-dealer quotation. State Farm's payment to Ngethpharat did not rely on a valuation using comparable vehicles and a negotiation deduction; it relied on the second Autosource report based on a two-dealer quotation with *no* negotiation deduction. Ex. B (Second Ngethpharat Autosource Report).

| DEFENDANT'S MOTION TO DISMISS<br>2:20-cv-00454-MJP | 2 | WHEELER TRIGG O'DONNELL LLP<br>211 N. Broadway, Suite 2825<br>St. Louis, Missouri 63102<br>P 314.326.4128 |

#6216561.8

### B.   James Kelley

On January 16, 2020, Plaintiff Kelley's 2020 Ford Explorer Platinum Turbo 4WD Wagon was in an accident. (*Id.* ¶ 1.9.) His vehicle had 3,743 miles on it when the accident occurred. (*Id.* ¶ 1.9.) He presented a claim to State Farm under the Comprehensive/Collision provisions of his policy, and State Farm determined that the vehicle was a total loss. (*Id.*) Plaintiff Kelley alleges that State Farm based its actual cash value amount on a report from Autosource, which applied a negotiation deduction of $2,929.00 to the $58,850.00 advertised price of one comparable vehicle (a 5% deduction).[4] (*Id.* ¶¶ 1.10-1.11.) After applying the deductible from his policy and other non-relevant deductions, State Farm paid Kelley $54,056.00. (*Id.*)

### C.   The Insurance Policies

Plaintiffs Ngethpharat and Kelley's insurance policies provide that State Farm will "[p]ay the cost to repair the covered vehicle minus any applicable deductible" or "[p]ay the actual cash value of the covered vehicle minus any applicable deductible."[5] (Ex. E, Ngethpharat's Insurance Policy, Policy 9847, at 30-31 (Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage); Ex. F, Kelley's Insurance Policy, Policy 9847, at 30-31 (Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage).) The policies are consistent with Washington's insurance regulations, which require the insured to receive an amount equal to the "actual cash value" of the vehicle if the amount necessary to repair the vehicle is greater than its "actual cash value." WAC 284-30-391(2).

---

[4] Ex. C (Kelley Autosource Report).

[5] Ngethpharat alleges that State Farm paid her under the Underinsured Motor Vehicle Property Damage Coverage. But that coverage has a limit of $10,000 for each accident, so she would have received much less under that coverage if that were true. Ex. D, Ngethpharat's Declarations Page, at 1 ("Underinsured Motor Vehicle Property Damage Coverage Limit - Each Accident $10,000"). State Farm paid her the actual cash value of her vehicle pursuant to her Collision Coverage. Ex. E, Policy at 30-31.

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

3

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

### D. Plaintiffs' Claims

In Count I, Plaintiffs allege that State Farm breached its insurance contract and Washington law by failing to pay the amount purportedly required by WAC 284-30-391. (Am. Compl. ¶ 6.3.) In Count II, Plaintiffs allege that State Farm violated the Washington Consumer Protection Act because State Farm based its payments of actual cash value on a negotiation deduction that is not "verifiable," not based on "verifiable" sales or sales within 150 miles and 90 days of the loss, and not based upon "comparable motor vehicles" as required by Section 391. (*Id.* ¶ 7.2.) In Counts III and IV, Plaintiffs seek a declaration that State Farm's use of a negotiation deduction violates Washington law, and an order enjoining State Farm from applying the deduction. (*Id.* ¶¶ 8.1-8.3.)

## III. STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Rule 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

4

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

## IV. ARGUMENT

### A. THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY AND WITH PREJUDICE.

#### 1. The Court Should Dismiss all Claims because State Farm Did Not Violate WAC 284-30-391.

All Plaintiffs' claims rest on the allegation that State Farm violated WAC 284-30-391 by applying a negotiation deduction to the advertised prices of comparable vehicles. (*See, e.g.*, Am. Compl. ¶ 1.14 ("STATE FARM, using Autosource, took (and routinely takes) an additional deduction for an amount it attributes to 'typical negotiation' and does this by deducting an adjustment to the verifiable price for the comps").) But the fundamental premise of all Plaintiffs' claims—that the "actual verifiable price" of a comparable vehicle is its advertised price—is wrong for three reasons. First, Plaintiffs presume that the fair market value of a comparable vehicle is its advertised price, but that ignores the reality of "haggling" when buying a vehicle. Second, nothing in Section 391 prohibits a negotiation deduction, so State Farm could not have violated that provision by applying one. Third, State Farm's negotiation deduction is "verifiable" under that term's plain ordinary meaning.

##### a. Plaintiffs Fail to State Claims Because They Do Not Plausibly Allege That They Received Less than Actual Cash Value.

Unless the parties agree to a value, Washington law requires an insurer to replace a total-loss vehicle or pay the "actual cash value" of the vehicle. WAC 284-30-391(1) & (2). Washington law defines "actual cash value" as "the fair market value of the loss vehicle immediately prior to the loss." WAC 284-30-320(1). The fair market value of a vehicle or other property "is that which an informed buyer would willingly pay and an informed seller would accept." *DePhelps v. Safeco Ins. Co. of Am.*, 116 Wash. 441, 453, 65 P.3d 1234, 1240 (2003); *accord, e.g. Coast to Coast Stores (Cent. Org.), Inc. v. Gruschus*, 100 Wash. 2d 147, 162-163, 667 P.2d 619, 628-29 (1983).

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

5

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

Here, Plaintiffs' allegations all suffer from the same fatal flaw: they presume that fair market value is the same as the advertised price of a comparable vehicle. *See, e.g.*, Am. Compl. ¶ 1.15 (contending that State Farm violated Section 391 by not paying them the advertised price of a comparable vehicle). But that ignores "the realities of the haggling that ensues in the American market when one buys a vehicle." *Robinson*, 387 F.3d at 423. "[I]ndividual prices [are] negotiated by car buyers, some of which may pay hundreds less than other buyers for an identically equipped automobile." *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 380 (Colo. App. 2009); *see also Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 489 (3d Cir. 1992) (noting that "prices are individually negotiated" in the retail automobile market). In this way, the price someone *actually pays* for a vehicle is the fair market value, and thus the actual cash value of the vehicle under Washington law. Plaintiffs allege no facts that the payments they received were less than the *fair market value* of their vehicles before the accident. All they allege is that the payments received were less than the *advertised price* for a comparable vehicle. Because that is insufficient, Plaintiffs have not plausibly alleged a violation of Section 391 (or concomitant breach of the policies).[6]

          b.        Plaintiffs Do Not Allege a Section 391 Violation because Subsection 391(4)(b) Does Not Prohibit a Negotiation Deduction.

Next, Plaintiffs accuse State Farm of violating Section 391 because State Farm "did not base its total loss offer to the Plaintiffs solely upon deductions for 'options, mileage or condition' nor upon 'verifiable dollar amounts for vehicles that are currently available, or were available within ninety days' as WAC 284-30-391(4) required." (Am. Compl. ¶ 1.14.) Under Subsection 391(4)(b), insurers must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles

---

[6] Washington's insurance regulations also provide that if the insured cannot purchase a comparable vehicle within 35 days, but locates a more expensive comparable vehicle, the insurer must re-open the file. WAC 284-30-391(6). The insurer must purchase the comparable vehicle, provide funds to purchase the vehicle, or invoke the appraisal provision. WAC 284-30-391(6). Neither Plaintiff invoked this policy provision.

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

6

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability." WAC 284-30-391(4)(b). Plaintiffs fail to state claims under Subsection 391(4)(b) for three reasons.

First, Subsection 391(4)(b) provides a *non-exclusive* list of permissible deductions, so State Farm could not have violated it simply by applying a deduction not expressly mentioned by that provision. Plaintiffs wrongly presume that Subsection 391(4)(b) is an exclusive list, but all that subsection says is that insurers must make "deductions or additions for options, mileage or condition when determining comparability." WAC 284-30-391(4)(b). It does not say those are the "only" permissible deductions, and if the drafters had intended them to be, they would have said so, as they routinely do in other insurance regulations. *See, e.g.*, WAC 284-30-391(5) (insurers must adjust a total loss settlement "through the following methods *only*") (emphasis added); WAC 284-30-395(1) ("These are the *only* grounds for denial, limitation, or termination") (emphasis added). Put simply, the drafters knew how to express their intent to create an exclusive list by using the term "only," and their decision to omit that term renders Subsection 391(4)(b) non-exclusive.[7] And because a non-exclusive list cannot be read to prohibit a deduction not expressly mentioned—here, a negotiation deduction—Plaintiffs' claims must fail for that reason alone.

Second, Subsection 391(4)(b)'s non-exclusive list specifically applies "when determining comparability," not determining actual cash value. WAC 284-30-391(4)(b) (requiring insurers to make "deductions or additions for options, mileage or condition *when determining comparability*" (emphasis added)). And nothing in Subsection 391(4)(b) limits the factors that insurers can consider when determining the actual cash value or fair market value of a vehicle. Again, this is fatal to Plaintiffs' claims.

---

[7] Washington courts "interpret regulations under the rules of statutory construction," "giving effect to all of the language used," and providing "'a rational, sensible interpretation.'" *Mader v. Health Care Auth.*, 149 Wash. 2d 458, 472, 70 P.3d 931, 937 (2003) (citation omitted).

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

7

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

Third, Plaintiffs' contention that "actual cash value" is the "advertised price" adjusted only by deductions or additions for options, mileage or condition is contrary to the regulatory definition of "actual cash value" as "fair market value" because the advertised price is not the purchase price. WAC 284-30-320. Plaintiffs' interpretation would render that definition meaningless, and courts routinely reject such interpretations. *See, e.g.*, *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) ("A 'basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless'") (citation omitted); *State v. Roggenkamp*, 153 Wash. 2d 614, 624, 106 P.3d 196, 201 (2005) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous"). Plaintiffs' interpretation also conflicts with Washington's public policy precluding windfalls by limiting insurance to reimbursement for actual losses. *See Gossett v. Farmers Ins. Co. of Washington*, 133 Wash. 2d 954, 698, 948 P.2d 1264, 1271 (1997) ("A fundamental principle of insurance law is that 'opportunities for net gain to an insured through the receipt of insurance proceeds exceeding a loss should be regarded as inimical to the public interest'") (citation omitted). Because Plaintiffs fail to plausibly allege a violation of Subsection 391(4)(b), the Court should dismiss the Amended Complaint.

        c.        State Farm's Negotiation Deduction Is Verifiable.

Finally, Plaintiffs also allege that the negotiation deduction violates Subsection 391(4)(b) because it is not based on "verifiable" amounts. (Am. Compl., ¶ 1.14.) Specifically, Plaintiffs allege that the "verifiable" price is the advertised price. (*See, e.g.*, Am. Compl. ¶ 1.8 (alleging that the "valuation was based upon an *Autosource* [report] which took an unverifiable and unclear deduction for 'typical negotiation' off the verifiable price for each of the four comparable vehicles"); *id.* ¶ 1.10 (alleging that the Autosource report took an unverifiable and unclear deduction for "typical negotiation" off the verifiable price of the comparable vehicle identified in the report); *see also id.* ¶¶ 1.11-16.)

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

8

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

Because the regulation does not define the term "verifiable," courts apply the term's ordinary plain meaning. *State v. Watson*, 146 Wash. 2d 347, 954, 51 P.3d 66, 69 (2002) ("[I]n the absence of a statutory definition this court will give the term its plain and ordinary meaning ascertained from a standard dictionary."); *State v. Sullivan*, 143 Wash. 2d 162, 175, 19 P.3d 1012, 1019 (Wash. 2001) ("[T]his court may resort to dictionary definitions to ascertain the term's plain and ordinary meaning."). "Verifiable" means "[a]ble to be checked or demonstrated to be true, accurate, or justified." (https://en.oxforddictionaries.com/definition/verifiable; *see also* https://www.collinsdictionary .com/us/dictionary/english/verifiable ("Something that is verifiable can be proved to be true or genuine"); https://www.merriam- webster.com/dictionary/verifiable ("capable of being verified").) In light of that definition, Plaintiffs would have to plead facts demonstrating that it is not possible to check or prove the accuracy of the negotiation deduction, but they have not done so. Nor could they, because comparing actual purchase prices with the negotiation deduction could demonstrate its truth or accuracy.[8] Accordingly, the Court should dismiss this claim because Plaintiffs do not plausibly allege that State Farm violated Subsection 391(4)(b).

***

In sum, the Court should dismiss Plaintiffs' claims because they do not plausibly allege violations of Section 391, which is the fundamental premise of all Plaintiffs' claims.

    2.  The Court Should Dismiss Counts III and IV as Duplicative.

---

[8] Magistrate Judge Peterson recently declined to dismiss a similar claim regarding the verifiability of a negotiation deduction. *See Zuern v. IDS Prop. Cas. Ins. Co.*, No. C19-6235-MLP, 2020 WL 2114502, at *5 (W.D. Wash. May 4, 2020) (finding that "Plaintiffs have plausibly alleged that the information provided by IDS as to the basis for the 'typical negotiation' adjustment was insufficient to meet the requirements of Subsection 391 and plausibly alleges a breach of contract claim"). *Zuern* is not persuasive on this point. A verifiable fact is one capable of demonstration as true or accurate. The reports' actual cash value of the comparable vehicles, which includes the negotiation deduction, is capable of comparison with, for example, the actual purchase price of those vehicles or the average deduction off advertised prices in the region to determine whether the amount is true or accurate. The amount, therefore, is verifiable, *i.e.*, capable of being verified.

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

9

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

In Counts III and IV, Plaintiffs seek a declaratory judgment that State Farm's negotiation deduction violates Washington law, and an order enjoining State Farm from applying the deduction. (Am. Compl. ¶¶ 8.1-8.3.) The Court should dismiss the claim for a declaratory judgment because it is duplicative of the breach of contract and CPA claims. *See, e.g.*, *Stetson v. Washington State Dep't of Corr.*, 2016 WL 6126029, at *3-4 (W.D. Wash. Oct. 20, 2016) (dismissing claim for declaratory relief because it "is duplicative of Plaintiff's other causes of action"); *Kwai Ling Chan v. Chase Home Loans Inc.*, 2012 WL 1252649, at *4 (W.D. Wash. Apr. 13, 2012) (same); *Microsoft Corp. v. Motorola, Inc.*, 2011 WL 11480223, at *5–6 (W.D. Wash. June 1, 2011) ("Based on the duplication between Microsoft's declaratory judgment claim and its other claims, the Court dismisses Microsoft's declaratory judgment claim"); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("To the extent Swartz seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed").

The Court should dismiss the claim for injunctive relief because an injunction is a remedy for another claim—the CPA claim—not a separate cause of action. *Robinson v. Wells Fargo Bank Nat'l Ass'n*, 2017 WL 2311662, at *5 (W.D. Wash. May 25, 2017) ("[A] claim for injunctive relief, standing alone, does not state a cause of action."); *accord Zhong v. Quality Loan Serv. Corp. of Washington*, 2013 WL 5530583, at *7 (W.D. Wash. Oct. 7, 2013); *Kwai Ling Chan*, 2012 WL 1252649, at *3. Plaintiffs may seek injunctive relief as a remedy to their CPA claim, but "a separately pled claim or cause of action for injunctive relief is inappropriate." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010); *accord, e.g.*, *Kwai Ling Chan*, 2012 WL 1252649, at *3 ("Injunctive relief may be available if Plaintiff is entitled to such a remedy on an independent cause of action"); *Molina v. OneWest Bank, FSH*, 903 F. Supp. 2d 1008, 1022 (D. Haw. 2012) ("Plaintiff may receive injunctive relief if he is entitled to such a remedy pursuant to an independent cause of action, but injunctive relief may not stand alone"). The Court therefore should dismiss Plaintiffs' claim for injunctive relief. *Zhong*, 2013 WL 5530583, at *7 (dismissing claim for injunctive relief because it is not a cause

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

10

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

of action); *Kwai Ling Chan*, 2012 WL 1252649, at *4 (same).

### B. ALTERNATIVELY, THE COURT SHOULD COMPEL APPRAISAL AND STAY THIS ACTION.

Appraisal clauses are vigorously enforced under Washington law. *Keesling v. W. Fire Ins. Co. of Fort Scott, Kansas*, 10 Wash. App. 841, 846, 520 P.2d 622, 626-28 (1974) ("[I]nsurance polic[ies] requiring an appraisal are universally held to be valid and enforceable, and, if the assured refuses to comply with a demand for appraisal, such refusal may be plead in bar of a recovery."); *Kochendorfer v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 1204714, at *2 (W.D. Wash. April 11, 2012) (appraisal awards under insurance policy provisions are "conclusive as to the amount of loss," and may be challenged "only with respect to fairness of the appraisal process"); WAC 284-30-391(3) ("Appraisal: If the first party claimant and the insurer fail to agree on the actual cash value of the loss vehicle and the insurance policy has an appraisal provision, either the insurer or the first party claimant may invoke the appraisal provision of the policy to resolve disputes concerning the actual cash value."). The purpose of appraisal clauses is "to provide an 'inexpensive[ ] and speedy determination of the extent of the loss.'" *MKB Constructors v. Am. Zurich Ins. Co.*, 2014 WL 2533286, at *4-5 (W.D. Wash. June 5, 2014) (citation omitted).

Here, the Policy's appraisal provision requires appraisal if "there is disagreement as to the actual cash value of the covered vehicle," and either the insured or insurer requests appraisal:

> The owner of the covered vehicle and we must agree upon the actual cash value of the covered vehicle. If there is disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal upon written request of the owner or us ….

(Exs. E & F, Policies at 31.) On January 17, 2020, several months before filing her original Complaint, Ngethpharat "demand[ed] appraisal" for her claim—a process that is still ongoing. (Ex. G, Letter from Brazel to State Farm.) And for Kelley, Plaintiffs' First Amended Complaint was the first time that he ever asserted that he was underpaid in the settlement of his total-loss

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

11

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

claim, and State Farm requested an appraisal soon after that filing. (Ex. H, Letter from State Farm to Hansen.)

Courts in Washington and elsewhere routinely compel appraisal where, as here, the litigation concerns a dispute over the *value* of a total-loss claim, as opposed to coverage. (*See, e.g.*, Am. Compl. ¶¶ 1.1, 1.8, 1.10); *Meier v. Travelers Home & Marine Ins. Co.*, 2015 WL 11571005, at 2 (W.D. Wash. Nov. 23, 2015) ("[C]ourts generally enforce appraisal provisions—even in the face of an alleged breach—where valuation is an issue in the litigation."); *Langley v. Geico Gen. Ins. Co.*, 2014 WL 11395159, at *1 (E.D. Wash. Dec. 8, 2014) (compelling Plaintiff to comply with the appraisal provision of the insurance policy); *see also Enger v. Allstate Ins. Co.*, 407 F. App'x 191, 193 (9th Cir. 2010) (affirming the district court's order compelling appraisal where the dispute concerned the "actual cash value" of property, regardless whether the cause of the disagreement stemmed from the "alleged use of an improper valuation method"); *McGowan v. First Acceptance Ins. Co., Inc.*, 411 F. Supp. 3d 1293, 1297 (M.D. Fla. 2019) (compelling appraisal and dismissing action because the dispute over the "actual cash value" of a total-loss vehicle "only raise[s] questions regarding the amount of loss," not coverage).

A district court has the "power to stay proceedings" as part of its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to stay an action, courts must weigh competing interests that affected by the granting or refusal to grant a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Among these competing interests are (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* (citing *Landis*, 299 U.S. at 254–55). Courts routinely grant a stay while the appraisal process is underway because it provides an inexpensive and speedy determination of the extent of the loss. *See Trident Seafoods Corp. v. Commonwealth Ins. Co.*, 2010 WL 3894111, at *9 (W.D. Wash. Sept. 29, 2010)

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP
12
WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

1  (staying the underlying case pending appraisal); *Keesling*, 10 Wash. App. at 850 (directing the
2  trial court to impose a stay pending appraisal); *see also MKB Constructors* 2014 WL 2533286,
3  at *4-5 (noting that the purpose of appraisal is to provide an inexpensive and speedy
4  determination of the extent of the loss).

5    The Court should grant a stay here because, given the nascent stage of this case, Plaintiffs
6  will not be damaged. State Farm confirmed coverage, but disagrees about the amount of the loss
7  for both Plaintiffs. State Farm otherwise might face significant hardship having to participate in
8  potentially burdensome discovery that may prove unnecessary because appraisal will establish
9  the actual cash value of Plaintiffs' vehicles. Appraisal, furthermore, is a condition precedent to
10 filing a suit against State Farm. (Exs. E & F, Policies at 31 ("If there is disagreement as to the
11 actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal
12 upon written request of the owner or us")). A stay to allow appraisal is in accordance with the
13 Policy provisions. The orderly course of justice also counsels in favor of a stay because the main
14 issue in contention—the amount paid to Plaintiffs—can be resolved first, and remaining issues, if
15 any, can be properly framed. *See Landis*, 299 U.S. at 254-55 (listing factors)); *MKB*
16 *Constructors*, 2014 WL 2533286, at *4-5 (citing cases granting stays and noting the absence of
17 any case "permitting the parties to go to trial first and then subsequently submit to the policy's
18 appraisal process in order to determine the value of the loss").

19   Accordingly, and in the alternative to dismissing the Amended Complaint, the Court
20 should compel appraisal and stay this case pending appraisal.

21 **V.    CONCLUSION**

22   For these reasons, State Farm respectfully requests the Court to dismiss Plaintiffs'
23 Complaint in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative,
24 State Farm respectfully requests the Court to compel appraisal and stay this action pending those
25 appraisals.

26

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

13

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

| | | |
|---|---|---|
| 1 | Dated: May 29, 2020 | WHEELER TRIGG O'DONNELL LLP |
| 2 | | |
| 3 | | *s/ Peter W. Herzog* |
| | | Peter W. Herzog III (*pro hac vice*) |
| 4 | | 211 N. Broadway, Suite 2825 |
| | | St. Louis, Missouri 63102 |
| 5 | | Telephone:  314.326.4128 |
| | | Facsimile:   303.244.1879 |
| 6 | | Email:  pherzog@wtotrial.com |
| 7 | | |
| | | Eric L. Robertson *(pro hac vice)* |
| 8 | | 370 17th Street, Suite 4500 |
| | | Denver, Colorado  80202-5647 |
| 9 | | Telephone:  303.244.1842 |
| | | Facsimile:   303.244.1879 |
| 10 | | Email:  robertson@wtotrial.com |
| 11 | | |
| | | BETTS, PATTERSON & MINES, P.S. |
| 12 | | |
| 13 | | *s/ Matthew Munson* |
| | | Joseph D. Hampton, WSBA #15297 |
| 14 | | Matthew Munson, WSBA #32019 |
| | | One Convention Place |
| 15 | | 701 Pike Street, Suite 1400 |
| | | Seattle, WA 98101-3927 |
| 16 | | Telephone:  206.292.9988 |
| | | Facsimile:   206.343.7053 |
| 17 | | Email:  jhampton@bpmlaw.com |
| 18 | |             mmunson@bpmlaw.com |
| 19 | | |
| | | Attorneys for Defendant State Farm Mutual |
| 20 | | Automobile Insurance Company |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |

DEFENDANT'S MOTION TO DISMISS  
2:20-cv-00454-MJP

14

**WHEELER TRIGG O'DONNELL LLP**
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on May 29, 2020, I electronically filed the foregoing **DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO COMPEL APPRAISAL, AND STAY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Stephen M. Hansen**
  info@stephenmhansenlaw.com

- **Scott P. Nealey**
  snealey@nealeylaw.com

     *s/ Peter W. Herzog*

DEFENDANT'S MOTION TO DISMISS
2:20-cv-00454-MJP

15

WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
P 314.326.4128

#6216561.8